IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| THE UNITED STATES OF AMERICA, | * * * |
| Plaintiff, | * * |
| vs. | Civil Action No.: |
| | * |
| GARY A. DAWSON, RODNEY P. DAWSON, and KAY S. DAWSON, Individually or as Executrix of the Estate of JOHN W. DAWSON, JR., Deceased, | 5:17-CV-501 (MTT) |
| Defendants. | * |

AMENDED COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF

**COMES NOW,** The United States of America (hereinafter "the United States") as Plaintiff in the above captioned case and by and through the undersigned United States Attorney for the Middle District of Georgia restates and amends its originally filed complaint for declaratory and injunctive relief against the Defendants as follows:

**JURISDICTION AND VENUE**

1. In this case the United States acts as Plaintiff to enforce duties, rights, and entitlements exercised under federal law and jurisdiction is therefore proper under 28 U.S.C. §§ 1331 and 1345.

1

2. The Middle Judicial District of Georgia and its Macon Division therein is the proper venue of this action by virtue of the following:

(a) The Defendants above-named are residents of Pulaski County, Georgia, within this District and Division;

(b) The acts and omissions of the Defendants hereinafter described occurred within this District and Division; and

(c) The property on which the United States seeks to enforce the terms of a lease is in Pulaski County, Georgia, within this District and Division.

**RELEVANT BACKGROUND**

3. The Federal Aviation Administration (FAA) is a department or component of the United States Department of Transportation, an agency of the United States. 49 U.S.C. § 106.

4. As pertinent hereto, the FAA has sole authority as and for the United States to regulate the use of its airspace for its efficient use and the safety of aircraft using the airspace including regulation of all aspects of aviation navigation such as radio navigation systems and other navigation aids. 49 U.S.C. §§ 106(g), 40103–40107, 40113, 44502, 44701–44702, 44708–44709, 44719, 44721–44722, and 46308; and 14 C.F.R. Part 170.

5. In furtherance of the accomplishment of its flight safety mission, the FAA has established and operated a comprehensive network of radio navigation aids which includes a Very High Frequency Omni Range facility (VOR), a Distance Measuring Equipment (DME), and a Tactical Air Navigation (TACAN) in Pulaski County, Georgia (collectively hereinafter the "VNA VOR").

6. A VOR is a navigational aid that operates in the very high frequency band of the radio spectrum that radiates uniformly in azimuth (bearing locations). Specifically, a VOR facility operates between 108 MHz and 118 MHz and provides azimuth guidance to the pilot in the form of a cockpit visual display.

7. This VOR is a conventional VOR with a frequency set at 116.5 MHZ and a Magnetic Variation of one (1) degree East. This VOR was modeled with standard Twenty-Six (26) feet radius counterpoise at a height of Twelve (12) feet. This VOR has been identified to be retained as part of the VOR Minimum Operating Network (MON).

8. The principle operation of a VOR facility is bearing measurement by phase components. This means that the transmitter on the ground produces and transmits two (2) signals which make it possible for the receiver (the aircraft) to determine its position in relation to the ground

station by comparing the phases of the two (2) signals.  The VOR utilizes a technique called space modulation.  There are two (2) separate signals that radiate independently from the VOR and then are combined when received by the aircraft receiver.  This technique of space modulation is susceptible to interference since each radiated signal component may take a slightly different path to the receiver.  Transmission of VOR signals can be affected by Reflection or Scattering.  Reflection occurs when radio frequency waves reflect off objects such as metal or glass.  Scattering occurs when the radio frequency waves hit an uneven surface such as a rough or uneven ground plane which may cause the radio frequency energy to reflect in many directions.  These effects can cause the signals emitted from the VOR ground station to combine in space and when received by the airborne equipment, the combination of two (2) different modulating signals yields a resultant signal to the aircraft containing false bearing information to the aircraft receiver.

      9.     Distance Measuring Equipment (DME) is a terminal area or en route navigation system consisting of a transponder which automatically transmits encoded signals in response to airborne equipment interrogations providing the pilot with direct readout indication of aircraft distance from the identified DME facility.

10. Tactical Air Navigation (TACAN) is a system used as a UHF transponder facility in the en route navigation system which transmits a pulse train providing distance and azimuth information to an aircraft relative to facility location.

11. The VNA VOR was established on land leased from Slade Farms, LLC which lease was executed by the Lessor on November 6, 2012, and on behalf of the United States as Lessee on November 13, 2012, and recorded in the property records of the Superior Court of Pulaski County, Georgia on March 5, 2013, in Deed Book 281, Pages 606-17 (hereinafter the "Lease").  The Lease accompanied the originally filed Complaint as Attachment A and it is re-incorporated herein by reference thereto just as if it were restated herein verbatim.  In the said Superior Court property records there is a notation penned onto the recorded lease directing reference to Deed Book 299, Pages 385-86.

12. Property of Slade Farms, LLC, including the part which was the subject of the Lease, was sold to the Defendants Gary A. Dawson and Rodney Dawson and to the predecessor in interest of Defendant Kay S. Dawson, Decedent John W. Dawson, Jr., on June 30, 2016, by Warranty Deed recorded on that same date in the property records of the Superior Court of Pulaski County, Georgia in Deed Book 299, Pages 380-81.

13.     Its Deed Book 281, Pages 606-17 recording in the Pulaski County, Georgia property records was legal notice to the world, including the Defendants and the predecessor in interest of Kay S. Dawson, that the Lease was binding upon and enforceable against succeeding owners of the leased land.  Moreover, apparently contemporaneously with the execution and transfer of the aforementioned Deed Book 299, Page 380-81 Warranty Deed, the Lease was assigned to the Defendants and the predecessor in interest of Kay S. Dawson by Assignment dated June 30, 2016, and recorded that same date in the property records of the Superior Court of Pulaski County, Georgia in Deed Book 299, Pages 385-86, which Assignment was further memorialized by execution by John W. Dawson, Jr., Deceased, and Defendants Gary A. Dawson and Rodney P. Dawson of an "Acknowledgment of Assignee" thereon.

14.     The originally filed Complaint in this case named as one of the Defendants John W. Dawson, Jr. but it was learned after filing that Mr. John W. Dawson, Jr. had passed away on May 21, 2017, and his wife, Kay S. Dawson, had been appointed by the Probate Court of Pulaski County in case number 2017-P-14 to serve as the Executrix of the his Estate.  John W. Dawson, Jr. is deleted as a party herewith.  The real property which is the subject of the Lease on which enforcement is sought herein was devised and

bequeathed by the Last Will and Testament of John W. Dawson, Jr. to Kay S. Dawson but she has not at this point exercised her prerogative as Executrix to deed the property to herself; the property remains in the Estate with Kay S. Dawson holding title thereto as Executrix for administrative purposes until there is a Deed of Assent.  Presently, therefore, Kay S. Dawson is made a Defendant in her capacity as Executrix of the Estate of John W. Dawson, Jr., as his successor in interest, with reservation to name her as Defendant in her individual capacity upon her obtaining ownership individually.

## CRITICAL TERMS OF LEASE

15.   Coming now to the issues in the case, the United States first discusses some of the characteristics of the VNA VOR and why terms of the Lease were critical thereto.

16.   The VNA VOR is a part of a radio navigation system for aircraft, enabling aircraft with a receiving unit to determine their position and stay on course by receiving radio signals transmitted by the VOR as a part of a network of fixed ground radio beacons.  Transmission of the signals to the aircraft is susceptible to interference such as when the radio waves encounter reflective objects or conditions, or objects or conditions which

scatter the signal. The resultant loss of integrity of the signal received by the airborne receiver yields false bearing and hence false location information.

17. It is therefore imperative that a VOR be situated in such a way and in such a place as to ensure that the radio signals emitted do not encounter interference of the kind that yields false bearing and location information.

18. In keeping with the aforementioned principles and in accordance with Siting Criteria guidance adopted by the FAA, the Lease requires that there be no obstructions within one thousand (1,000) feet of the radio signal transmitter antenna, meaning that a circle with a radius of one thousand feet from the antenna will remain clear of anything considered by the FAA to interfere with the operation and proper functioning of the VOR.

### VIOLATION OF THE LEASE BY THE DEFENDANTS AND INTERFERENCE WITH THE PERFORMANCE BY THE UNITED STATES OF THE GOVERNMENTAL AND SAFETY FUNCTIONS OF THE FAA

19. Notwithstanding that the Lease was binding upon and enforceable against them Defendants Gary A. Dawson and Rodney P. Dawson and the predecessor in interest of Kay S. Dawson, Executrix, John W. Dawson, Jr. put in place an irrigation system within One Thousand (1,000) feet of the VNA VOR antenna. The irrigation system consists of a One Thousand Two Hundred (1,200) feet metal structure. One end of the

irrigation system is attached to a concrete pad with a pyramid shaped steel structure securing it in place.  The irrigation system has a center pivot overhead sprinkler system consisting of several segments supported by trusses and interspersed between wheeled towers which move in a circular pattern discharging water fed through piping along the structure from the pivot point at the center of the circle.  That piping is approximately six (6) inches in diameter.

20. The United States, by and through the FAA, determined that the Defendants' above-ground, center pivot irrigation system and its components within a 1,000 feet radius of the VNA VOR interferes with its proper functioning.  The Defendants' irrigation system so degraded the signal from the VNA VOR antenna that the VOR monitoring system shut the facility down on February 9, 2017, to avoid the transmission of erroneous signals to aircraft from which erroneous location information of the plane would have resulted.  The VNA VOR has not functioned since that date.

### EFFECTS OF THE VIOLATION OF THE LEASE - VNA VOR HAS BEEN SHUT DOWN AND FLIGHT SAFETY HAS BEEN COMPROMISED

21. The VNA VOR navigational aid outage has a significant effect on aircraft otherwise relying upon its input, instrument flight procedures and air traffic control.  The VNA VOR outage impacts nine (9) airports and the

9

procedures that support the operations at these facilities. The lack of access to the equipment's capabilities removes the availability of the various procedures at the airports this equipment serves. When procedures are limited or not authorized, pilots must change their routes and destinations to other airports. From the FAA's data, from October 2016 through March 2017, approximately 1,315 flights utilized the airways that are serviced by the VNA VOR.

22. Generally, there are areas in the sky into which non-military traffic should not fly, and use of the VNA VOR and its kindred radio navigation stations define routes or areas for flights, called Victor Route Airways, to avoid these Military Operation Areas (MOA's). The airway navigation system was designed to allow pilots to fly outside active MOA's. Under radar conditions, aircraft flying on the Victor Routes that navigate around the MOA's and utilize the VOR must be radar vectored around the MOA's by Air Traffic Control. The need for aircraft to now require an increased focus and control by air traffic significantly adds to controllers' workload. The nearness of the VNA VOR to the United States Air Force Base in Houston County, Georgia, as well as the relatively heavy volume (compared to some other states and geographical areas) of both fixed and

rotary wing military traffic which can come within its orbit makes these considerations of particular import.

23. As aforementioned, the VNA VOR has been non-operational since February, 2017. Of necessity, the FAA has shifted the VNA VOR workload to other navigational aids. Doing this collaterally unduly burdens those facilities, pilots using the affected National Airspace System (NAS) and the air traffic controllers working the airspace in this area and it creates an unnecessary risk to the traveling public. This VNA VOR is also used by the military. The FAA's primary mission is the safe and efficient flow of the flying public which requires the utilization of its systems, including the operation of the VNA VOR. The FAA's mission is being negatively affected by the Defendants' continued siting and operation of the irrigation system described above and the FAA is requesting swift and final action against them. The potential for catastrophic harm is great. Because the workload of the VNA VOR is currently being absorbed by other navigational aids in the FAA's contingency plan, should any of those facilities suffer from a shutdown, the adverse effect would be great.

## RELIEF SOUGHT

24. On the basis of the actual controversy outlined in the foregoing, the United States seeks a judgment of the Court under 29 U.S.C. § 2201 and

Federal Rule of Civil Procedure 57 declaring the rights and legal relations of the parties arising out of the Lease, to wit; that the Defendants are in violation of the Lease and no obstruction of the kind and nature erected by the Defendants may exist within 1,000 feet of the VNA VOR.

25. The United States invokes that provision of Fed. R. Civ. P. 57 under which the Court may order a speedy hearing of a declaratory judgment action.

26. On the same considerations the United States seeks a preliminary and permanent injunction under Federal Rule of Civil Procedure 65 requiring the Defendants to remove the offending irrigation system and any components thereof from an area defined by a circle with a radius of 1,000 feet from the VNA VOR tower and barring re-introduction of any such obstruction during the term of the Lease.

27. The United States would prefer an immediate hearing on its entitlement to a preliminary injunction and upon advice of counsel, asks in accordance with Fed. R. Civ. P. 65(a)(2) that the Court advance the trial on the merits and consolidate it with the hearing for preliminary injunction, permitting entry of a final declaratory judgment and a permanent injunction incident to the trial.

**WHEREFORE,** the United States prays that effect be given its within Amendment, that the Court set a speedy hearing under Fed. R. Civ. P. 57 consolidating it with the hearing on the United States' request for a temporary and permanent injunction, that the United States have the declaration of the Court enforced by permanent injunction that no obstruction of any kind or nature is allowed within 1,000 feet of the VNA VOR tower, that the Court's permanent injunction require removal instanter of any obstruction within 1,000 feet of the VNA VOR tower, that the Court's injunction bar introduction during the remaining term of the Lease of any other obstruction within 1,000 feet of the VNA VOR tower, and that it have such other and further relief as to the Court may seem just.

        CHARLES E. PEELER
        UNITED STATES ATTORNEY
        MIDDLE DISTRICT OF GEORGIA
        ATTORNEY FOR THE UNITED STATES

By: /s/ Stewart R. Brown
      Stewart R. Brown
      Assistant United States Attorney
      Georgia State Bar # 089650
      United States Attorney's Office
      Middle District of Georgia
      P.O. Box 1702
      Macon, Ga. 31202-1702
      Telephone: (478) 621-2690
      Facsimile: (478) 621-2737
      Email: Stewart.Brown@usdoj.gov

## CERTIFICATE OF SERVICE

I, Stewart R. Brown, Assistant United States Attorney, hereby certify that on the 17th day of January, 2017, I electronically filed the above and foregoing Amended Complaint with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

William Patrick Horkan, Esq.
Attorney for the Defendants

I also certify that I have mailed by the United States Postal Service the document and a copy of the Notice of Electronic Filing to the following non-CM/ECF participants:

N/A.

/s Stewart R. Brown
Stewart R. Brown
Assistant United States Attorney